USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 30, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KEVIN RAZZOLI,                        :
                                      :
            Petitioner,               :    12 Civ. 3774 (LAP)(KNF)
                                      :
      -against-                       :    ORDER
                                      :
FEDERAL BUREAU OF PRISONS,            :
US NAVY, US MARSHALS SERVICE SDNY,    :
US PROBATION SOUTHERN DISTRICT        :
N.Y., and GEO GROUP,                  :
                                      :
            Respondents.              :
------------------------------------x
LORETTA A. PRESKA, Chief United States District Judge:

     On May 11, 2012, pro se petitioner Kevin Razzoli ("Razzoli"

or "Petitioner"), a federal prisoner, filed a Petition for a

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (See Pet.

for Writ of Habeas Corpus, dated May 2, 2012 (the "Petition" or

"Pet.") [dkt. no. 1].) Respondents the Federal Bureau of

Prisons, United States Navy, United States Marshals Service,

United States Probation Department, and the Geo Group

(collectively, "Respondents") opposed the Petition. (See

Resp'ts' Mem. of Law in Opp'n to Pet. for Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241, dated Aug. 17, 2012 (the

"Opposition" or "Opp'n") [dkt. no. 14].) On July 10, 2013,

Magistrate Judge Kevin Nathaniel Fox issued a Report and

Recommendation (the "Report") [dkt. no. 31], recommending that

the Petition be dismissed but that Razzoli be given an

opportunity to amend certain of the Petition's claims. For the

reasons set forth below, the Report is ADOPTED IN PART, and the Petition is DISMISSED with prejudice.

## I.   BACKGROUND

The Court accepts the Report's recitation of the facts at bar and repeats them below for context.

A.   Facts

1.   Allegations in the Petition

Razzoli alleges that he "is being illegally confined against his will by US PAROLE COM'N & also 'BOP / US DOJ & US NAVY,'" in violation of 18 U.S.C. §§ 241, 242, 1001, 1961-1964 and 10 U.S.C. § 858(a).[1]  (See Pet. at 3.)  Razzoli further claims that "on March 3, 2012, December 3, 2011, and in the past," Respondents "have used 'COINTEL-PRO /Mkultra' . . . and intentionally deny him the right to review & subpoena any Wittiness & Documents to show that 'US MARSHALS, FBI, BOP, TOP ECHILON RATS' working for the 'FBI/SIA RAT PROGRAM' . . . engaged in ACT of CIVIL RICO in unison & concert with one another to deny . . . Razzoli . . . his right to operate RAZ TRADING LLC in New York, New Jersey, Phila, Penn., . . . and also interfered with 'VENEZUELAN, Canadian[,] Spanish, Italian,' INTERNATIONAL TRADE & INTER-STATE COMMERCE[.]"  (Id.)

Razzoli alleges that the Respondents used "FALSE FBI

---

[1]  For ease of reference, the Court sometimes omits idiosyncratic punctuation, typography, and capitalization used in Petitioner's submissions.

REPORTS" and that "such 'ACTS DENIED RIGHT TO HAVE CHILDREN.'" (Id. at 4.)  Razzoli therefore requests a "COURT HEARING and [the] PRODUCTION of" various government officials and employees "to prove that ALL TOP ECHILON RATS ACTED under the Direction [of] 'CHIEF US DOJ & CHIEF FBI COUNSEL' which caused 'RACKETEERING ACTS' that US DOJ STATED resulted in such INJURIES at MDC BROOKLYN which was later used to 'PROLONG' such illegal incarceration." (Id.)

    2.  Facts Set Forth in Respondents' Return

On December 1, 1987, Razzoli was convicted of attempted murder and other offenses by a Navy Court Martial and sentenced to a term of twenty-five years' imprisonment.  (Return, dated Aug. 17, 2012 (the "Return") [dkt. no. 13] ¶ 1.)  On January 23, 2009, Razzoli was paroled by the United States Parole Commission (the "Commission"), which placed him under supervision in the Southern District of New York.  (Id. ¶ 2 & Ex. 2.)  On January 28, 2010, the Commission issued a violator warrant for Razzoli, charging him with:  (1) using dangerous and habit forming drugs, namely cocaine; (2) failing to submit to drug testing; (3) failing to report a change in employment; (4) leaving the district without permission; and (5) failing to report to his supervising officer as directed.  (Id. ¶ 4 & Exs. 4, 5.)  Razzoli was arrested pursuant to this warrant on March 4, 2010.  (Id. & Ex. 6.)

On April 21, 2010, the Commission found probable cause that Razzoli had violated his parole. (Id. ¶ 8 & Exs. 8, 10.)  The Commission subsequently ordered Razzoli to undergo a mental health evaluation. (Id.)  On July 7, 2010, after interviewing Razzoli, a Federal Bureau of Prisons staff psychologist recommended that Razzoli be referred for a forensic evaluation to determine whether Razzoli had a psychotic and personality disorder. (Id. ¶ 9 & Ex. 11.)  On July 28, 2010, the Commission informed Razzoli by letter that it had found probable cause that he violated his parole. (Id. ¶ 10 & Ex. 12.)  The Commission ordered a hearing to determine whether to revoke Razzoli's parole. (Id.)  The Commission received the results of the forensic evaluation on June 7, 2011. (Id. ¶ 13 & Ex. 15.)  The evaluation concluded that Razzoli was competent to proceed with the parole revocation hearing, although he presented with a mental disease:  delusional disorder with somatic and persecutory delusions. (Id.)

Razzoli's parole revocation hearing was held on September 23, 2011. (Id. ¶ 14 & Ex. 16.)  On November 30, 2011, the Commission informed Razzoli, by notice, of its decision to:  (1) revoke his parole; (2) withhold credit on the sentence, for the period beginning December 19, 2009 and ending March 3, 2010; and (3) re-parole Razzoli, effective December 3, 2011. (Id. ¶ 15 & Exs. 17, 18.)  On December 2, 2011, the Commission reopened

Razzoli's case and pushed back his effective parole date to March 3, 2012, because the Federal Correctional Institution in Fairton, New Jersey ("FCI Fairton"), where Razzoli was being held, needed additional time for release planning.  (Id. ¶ 16 & Exs. 19, 20.)  On December 30, 2011, FCI Fairton reported that Razzoli had been found guilty of fighting and threatening another with bodily harm.  (Id. ¶ 17 & Ex. 21.)  Because of these rule violations, the Commission pushed back Razzoli's effective parole date another sixty days, to May 2, 2012.  (Id. ¶ 18 & Ex. 22.)

Razzoli filed the instant Petition on May 11, 2012.  Once paroled, Razzoli was required to remain under parole supervision in the Southern District of New York through November 6, 2013.  (Id. ¶ 19 & Ex. 23.)  On June 6, 2012, the Commission issued, at the request of United States Probation Officer Robin M. Rice, a violator warrant charging Razzoli with:  (1) violating the special residential re-entry center parole condition; (2) violating the special drug and alcohol aftercare parole condition; (3) failing to report his change in residence; and (4) using dangerous and habit forming drugs, namely cocaine.  (Id. ¶ 21 & Exs. 25, 26.)  Razzoli surrendered on June 8, 2012.  (Id. ¶ 22 & Ex. 27.)

On June 14, 2012, the Commission requested that the United States Probation Office for the Southern District of New York

conduct an interview with Razzoli to assess whether there was probable cause that Razzoli had violated the abovementioned conditions of his parole. (Id. ¶ 23 & Ex. 28.) On June 20, 2012, Razzoli requested the interview be postponed so that he could obtain representation by counsel and the appearance of witnesses. (Id. ¶ 24 & Ex. 29.) The Commission was later informed that private counsel, instead of the Federal Defenders Office, had been appointed to represent Razzoli in the administrative proceeding due to a conflict of interest. (Id. ¶ 25 & Exs. 30, 31.)

B.  The Opposition

In the Opposition, Respondents raise three primary arguments. First, Respondents construe Razzoli's claims to allege that Respondents engaged in a conspiracy to (a) prevent Razzoli from operating Raz Trading LLC, (b) implant various devices into Razzoli, and (c) prevent Razzoli from reproducing. (Opp'n at 6 (citing Pet. at 3, 5, 6).) Respondents argue that these conspiracy claims "should be denied as frivolous." (Id.) Second, Respondents argue that Razzoli's challenge to his March 4, 2010 arrest and the January 28, 2010 parole revocation (which led to the March 4, 2010 arrest) "should be dismissed as successive" because "Razzoli previously filed a habeas petition[] concerning the March 4, 2010 arrest that was denied." (Id. at 7.) In the alternative, Respondents argue that these

claims should be dismissed because "Razzoli makes no allegations demonstrating that the March 4, 2010 arrest or the January 28, 2010 parole warrant were illegal . . . ." (Id.)  Third, Respondents argue that Razzoli's claim that "he was denied the opportunity to present witnesses at his September 23, 2011 revocation hearing" must fail because Razzoli was afforded sufficient due process at that hearing.  (Id. at 8-9.)

C.   The Report

As to Respondents' first argument, the Report rejected Respondents' contention that Razzoli's conspiracy claim is frivolous.  (Report at 10-12.)  There, the Report rejected this argument because the "assigned district judge did not dismiss the [P]etition" for frivolousness under 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (the "Habeas Rules") and instead "directed [Respondents] to file a written response" to the Petition.  (Id. at 11.)[2]  After rejecting Respondents' frivolousness argument, the Report turned to the merits of Razzoli's conspiracy claim.  The Report construed Razzoli's conspiracy claim as an allegation of a civil conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

---

[2]  On May 21, 2012, Judge Barbara S. Jones ordered the United States Attorney for the Southern District of New York to file a written response to the Petition.  (See Order to Answer, 28 U.S.C. § 2241, dated May 21, 2012 [dkt. no. 5].)

18 U.S.C. § 1961 et seq.  (Id. at 12.)  Because "[n]o factual allegations exist [in the Petition] about the existence of an enterprise or specific racketeering activities," the Report concluded "Razzoli's conclusory allegations . . . are insufficient to state a civil RICO violation claim."  (Id.)

As to Respondents' second argument, the Report performs a thorough analysis of the two earlier Razzoli cases that Respondents assert render the instant Petition successive.  (Id. at 12-16.)  The Report concludes that "[R]espondents' successive claim and successive petition arguments[] as well as the argument that the claims in the instant petition should be dismissed because they have already been decided on their merits are meritless."  (Id. at 15 (internal quotation marks and brackets omitted).)  The Report, however, agreed with Respondents' argument that these claims should be dismissed because Razzoli makes no allegations demonstrating the illegality of either the March 4, 2010 arrest or the January 28, 2010 parole warrant or both.  (Id. at 15-16.)

As to Respondents' third argument, the Report explained "[o]ther than making conclusory allegations that the [R]espondents violated his due process rights when, subsequent to his March 4, 2010 arrest, he was denied his right to present witnesses and subpoena various government agents, Razzoli failed to explain what, if anything, these individuals would testify

that would be relevant to the parole charges." (Id. at 16-17.)
The Report then observes that "Razzoli does not appear to
contest [the Parole Commission hearing officer]'s finding that
none of the witnesses Razzoli requested at his September 23,
2011 hearing had any relationship to the charged violations."
(Id. at 17.)  The Report concluded "granting a writ of habeas
corpus, based on Razzoli's due process violation(s) claim, is
not warranted." (Id.)

Finally, the Report recommended that Razzoli "be given an
opportunity to amend his petition" because "the Court cannot
rule out the possibility that an amended petition would state"
claims for "illegal arrest" and "civil RICO conspiracy." (Id.
at 17.)

D.   Objections

1.   Petitioner's Objections

By submission dated July 25, 2013, Razzoli objected to the
Report. (Objs. to Mag. Judge's Report & Recommendation, dated
July 25, 2013 ("Pet'r Objs.") [dkt. 37].)  First, Razzoli
appears to argue that the Report erred in construing his
conspiracy claims as allegations made under RICO. (See id. at 2
("that Kevin Razzoli cited CIVIL RICO VIOLATIONS did not file
CIVIL SUIT under 12-cv-3774 the case at bar . . . .").)  Second,
Razzoli appears to object to the Report because the Report
"fails to hold any mention that the US Attorney filed

[Respondent's] response using false [and] inaccurate exhibits referancing Kevin Razzoli's race as Black [and] using false e-mails via of FBI/SIA RAT (s) who hacked into computer of Petitioner Kevin Razzoli[.]" (<u>Id.</u> at 4.)  Further, Razzoli states that the "US MARSHALS arrested [him] on a FALSE ARREST Warrant issued for a BLACK RACE MALE . . . ." (<u>Id.</u>)

   2.   <u>Respondents' Objections</u>

   By submission dated July 29, 2013, Respondents raised a limited objection to the Report. (Resp'ts' Limited Objs. to Report and Recommendation ("Resp'ts Objs.") [dkt. no. 36].) There, Respondents first object to the Report's "analysis as it pertains to the Government's argument that the civil RICO conspiracy claim should be dismissed as frivolous." (<u>Id.</u> at 3.) Further, Respondents object to the Report's "suggestion that the Government should be precluded from arguing that a claim is frivolous because the district court did not dismiss the case <u>sua sponte</u> under 28 U.S.C. § 2243 and Rule 4 of the Habeas Rules." (<u>Id.</u> at 4.)  Last, Respondents object to the Report's conclusion regarding leave to amend, stating "given the frivolous nature of Petitioner's civil RICO conspiracy claim, the Court should not adopt the magistrate judge's recommendation that Petitioner be granted leave to amend that claim." (<u>Id.</u> at 4.)

## II.  DISCUSSION

A.   Standard of Review

In reviewing a magistrate judge's report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  When a timely and specific objection to a report and recommendation is made, the Court reviews de novo the portion of the report and recommendation to which the party objects.  Id.; Fed. R. Civ. P. 72(b)(3).  To accept those portions of the report to which no timely objection has been made, however, "a district court need only satisfy itself that there is no clear error on the face of the record."  Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (quoting Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).  De novo review is not triggered by all objections.  Indeed, where "a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  Walker v. Vaughan, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002); see also Edwards v. Fischer, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) ("where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, reviewing courts should review a report and

recommendation for clear error."). Finally, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all. See Forman v. Artuz, 211 F. Supp. 2d 415, 418 n.8 (S.D.N.Y. 2000).

Because Razzoli is proceeding pro se, his submissions are read liberally and interpreted "to raise the strongest arguments that they suggest." Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks omitted). Still, a pro se litigant is not exempt "from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (internal quotation marks omitted).

B.    Analysis

   1.    Habeas Claims

A prisoner may not be granted a writ of habeas corpus unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A prisoner challenge to the execution of a sentence, rather than the imposition of a sentence, is properly filed pursuant to 28 U.S.C. § 2241. See Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006). "Execution of a sentence includes matters such as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison

transfers, type of detention and prison conditions." <u>Id.</u>
(internal quotations omitted).

Here, Razzoli's claims are made properly under 28 U.S.C.
§ 2241 as he is challenging the arrest that led to the
revocation of his parole and the Commission's denial of his
parole. <u>See</u> <u>id.</u>; <u>cf.</u> <u>Cabrera v. United States</u>, 972 F.2d 23, 26
(2d Cir. 1992) (because 28 U.S.C. § 2255 was "designed to
challenge the validity of a sentence as imposed," it is
inappropriate to challenge the Commission's denial of parole).
Razzoli has not raised any claims regarding the legality of his
underlying 1987 conviction.  Accordingly, the Court adopts
Report's analysis of Razzoli's claims challenging his arrest
under 28 U.S.C. § 2241.

   2.   <u>Frivolousness:  Law of the Case Doctrine</u>

The Report reasons that because an order for a response was
issued, the Court "reviewed the petition preliminarily,
including for frivolousness, as provided by § 2243 and Rule 4 of
the § 2254 Rules, without dismissing it, before [it] ordered the
respondents to file the response." (Report at 11.)  The Report
thus recommends that Respondents' argument "that Razzoli's
conspiracy claims should be denied as frivolous is meritless
because that argument has no support in facts or law." (<u>Id.</u> at
12 (internal quotation marks omitted).)  Objecting to that
portion of the Report, Respondents argue that "[a] court's

decision not to dismiss a petition <u>sua sponte</u> under 28 U.S.C. § 2243 and Rule 4 does not represent a binding judicial determination that the claims are not frivolous, which then effectively becomes law of the case." (Resp'ts Objs. at 4.) The Court need not decide whether the statutory interpretation of Rule 4 of the Habeas Rules requires a finding that an order for a response to a petitioner's claim equates to a finding of non-frivolousness. Instead, under the law of the case doctrine, the Court revisits its previous review of the Petition. The Court erred in not summarily dismissing the Petition <u>sua sponte</u> because it "plainly appears from the face of the [P]etition . . . that [Petitioner] is not entitled to relief in the district court." Rule 4 of the Habeas Rules.

The law of the case doctrine is comprised of two distinct branches. The first, known as the "mandate rule," bars a trial court from "reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." <u>United States v. Uccio</u>, 940 F.2d 753, 757 (2d Cir. 1991). The second branch of the law of the case doctrine, however, applies in the absence of an intervening ruling on an issue by a higher court. <u>See</u> <u>United States v. Quintieri</u>, 306 F.3d 1217, 1225 (2d Cir. 2002). In such circumstances, the doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in

the same case, unless cogent and compelling reasons militate
otherwise." Id. (internal quotations and citations omitted).
The primary reasons justifying reconsideration of an issue by a
trial court are "an intervening change of controlling law, the
availability of new evidence, or the need to correct a clear
error or prevent manifest injustice." United States v. Tenzer,
213 F.3d 34, 39 (2d Cir. 2000) (internal quotations omitted).

Because no higher court has ruled on any issue in the
instant case, this Court proceeds under the second branch of the
law of the case doctrine. See Uccio, 940 F.2d at 757.
Specifically, the Court revisits its initial consideration of
Razzoli's claims under Rule 4 of the Habeas Rules, which states
in part that "[i]f it plainly appears from the face of the
petition and any exhibits annexed to it that the petitioner is
not entitled to relief in the district court, the judge shall
make an order for its summary dismissal . . . ." Summary
dismissals in the habeas context, which are made sua sponte, are
only appropriate "in those cases where the pleadings indicate
that petitioner can prove no set of facts to support a claim
entitling him to relief." Williams v. Kullman, 722 F.2d 1048,
1050 (2d Cir. 1983); see also Dory v. Comm'r of Corr. of State
of N.Y., 865 F.2d 44, 45 (2d Cir. 1989) ("[f]actual allegations
must be patently frivolous or false, or vague, conclusory, or
palpably incredible, for summary dismissal to be justified")

15

(internal quotations and citations omitted).  Moreover, while a plaintiff "certainly may allege that the most senior members of the United States government" engaged in a conspiracy, "the courts have no obligation to entertain pure speculation and conjecture."  <u>Gallop v. Cheney</u>, 642 F.3d 364, 368 (2d Cir. 2011).

    Here, Razzoli's claims are barely coherent.  Where intelligible, they are plainly "fanciful, fantastic, or delusional."  <u>Id.</u> (internal quotations omitted).  While difficult to understand completely, the underlying basis for Razzoli's claims is a broad government conspiracy consisting of high-ranking individuals within, <u>inter alia</u>, the Federal Bureau of Prisons, the Federal Bureau of Investigation, the United States Department of Justice, the United States Navy, and the GEO Group, all acting in unison and in concert, to prevent Razzoli from operating his produce business, having children, and leaving prison.  (<u>See</u> Pet. at 3-6.)  Razzoli has neither set forth any reason why such individuals would seek to keep him incarcerated for illegal reasons nor has he alleged how any of these groups are even remotely involved in such a conspiracy. Moreover, Razzoli's conclusory allegations about "DEVICES & TACTICS as implanted in Kevin Razzoli . . . [that] caused Kevin Razzoli[] not to have children" are frivolous and fanciful.  <u>See</u> <u>Razzoli v. United States Navy</u>, No. 09 Civ. 4323(KMW), 2010 WL

1438999, at *3 (S.D.N.Y. Apr. 12, 2010) (Petitioner's "largely incomprehensible-claims, concerning <u>inter alia</u> the Government's alleged use of thermal gamma imagery to sterilize Petitioner, [] dismissed as frivolous."). Thus, the Court corrects its clear error in failing to determine at the screening stage that Razzoli was not entitled to relief in the district court. These claims will be dismissed as frivolous.

  3. <u>Illegal Arrest Claim</u>

  The Report recommended that Razzoli's illegal arrest claim be dismissed. (Report at 15.) In his objection, Razzoli states that the "US MARSHALS arrested [him] on a FALSE ARREST Warrant issued for a BLACK RACE MALE . . . ." (Pet'r Objs. at 4.) Liberally construing this objection, as it must, the Court reads this as a challenge to the Report's illegal arrest recommendation. The Court does not consider this objection further for two reasons. First, it is a new assertion that Razzoli could have raised before Judge Fox. <u>See</u> <u>Forman</u>, 211 F. Supp. 2d at 418 n.8. Second, it is conclusory. <u>See</u> <u>Walker</u>, 216 F. Supp. 2d at 292. The Court thus adopts the Report's recommendation that Razzoli's illegal arrest claim be dismissed.[3]

---

[3] In any event, even if the Court were to accept Razzoli's objection, review this portion of the Report <u>de novo</u>, and consider Razzoli's objecting arguments, the conclusion reached above would not change.

4.   <u>RICO Civil Conspiracy Claims</u>

As explained above, the Court finds Razzoli's civil conspiracy claims frivolous and will dismiss them as such. However, for completeness of the record, the Court analyzes these claims under the recommendation set forth in the Report.

The Report construes Razzoli's conspiracy claims under RICO.  (<u>See</u> Report at 12.)  Razzoli objects but offers no other causes of actions under which his allegations might be advanced. (<u>See</u> Pet'r Objs. at 2.)

RICO provides for civil remedies to "[a]ny person injured in his business or property by reason of section 1962 of this chapter."  18 U.S.C. § 1964(c).  "Thus, in order to have standing, a plaintiff must show:  (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 23 (2d Cir. 1990).

A "civil RICO plaintiff must allege the defendant's '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" <u>United States v. Indelicato</u>, 865 F.2d 1370, 1376 (2d Cir. 1989) (quoting <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985)).  A "pattern of racketeering activity" must involve at least two predicate acts of racketeering.  18 U.S.C. § 1961(5); <u>see</u> <u>Lundy v. Catholic</u>

Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2009).

Upon de novo review, the Court would adopt the Report's decision to construe Razzoli's claims under RICO.  The Petition specifically invokes RICO by using the name of the statute and terms of art, such as "in unison & concert" (Pet. at 3), associated with that statute.  Indeed, the Petition goes as far as to allege that Respondents "engaged in ACT[s] of CIVIL RICO . . . ." (Id.)  Accordingly, the Report was correct in construing Razzoli's conspiracy claims under RICO and the Court adopts this portion of the Report.

Upon de novo review, the Court would adopt the Report's conclusion that "Razzoli's conclusory allegations . . . are insufficient to state a civil RICO violation claim" because "[n]o factual allegations exist [in the Petition] about the existence of an enterprise or specific racketeering activities." (Report at 12.)  The Petition's allegations are plainly insufficient to state such a claim.  See Gallop, 642 F.3d at 369 (dismissal of conspiracy claims warranted under Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) where plaintiff offered "not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators.").  Accordingly, they would be dismissed.

4.   <u>Due Process Claim</u>

The Report explained "[o]ther than making conclusory allegations that the [R]espondents violated his due process rights when, subsequent to his March 4, 2010 arrest, he was denied his right to present witnesses and subpoena various government agents, Razzoli failed to explain what, if anything, these individuals would testify that would be relevant to the parole charges." (Report at 16-17.)  Thus, the Report concluded that "granting a writ of habeas corpus, based on Razzoli's due process violation(s) claim, is not warranted." (<u>Id.</u>)  None of the parties objects to this conclusion.  Reviewing for clear error, the Court adopts this portion of the Report.

5.   <u>Leave to Amend</u>

The Report concluded that Razzoli should be given leave to amend his petition to "set[] forth detailed allegations respecting his March 4, 2010 illegal arrest and his civil RICO conspiracy claims." (Report at 17.)  Respondents objected to this portion of the Report. (Resp'ts' Objs. at 4.)  Upon a <u>de novo</u> review, as explained below, the Court finds all of Petitioner's claims frivolous and denies him leave to amend as such.

Razzoli has not requested leave to amend if the instant Petition is denied.  Nevertheless, because <u>pro se</u> complaints are to be read liberally, a court "should not dismiss without

granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotations omitted). Thus, where "[r]epleading would . . . be futile," "[s]uch a futile request to replead should be denied." Id. Similarly, a court may dismiss without leave to amend "where the substance of the claim pleaded is frivolous on its face." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988); see also Bloom v. United States Gov't, No. 02 Civ. 2352(DAB)(DF), 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) (denying leave to amend pro se plaintiff's "fantastic claims" that included a government conspiracy to drug him). Above, the Court found Razzoli's conspiracy claims barely coherent and frivolous even on under the most lenient reading. Razzoli's illegal arrest claims are similarly flawed. Accordingly, leave to amend the Petition is denied.[4]

---

[4]  The Report does not address whether Razzoli should be given leave to amend his due process claim, and neither party addressed this omission in their objections.  Even upon a de novo review, the Court concludes that the current conclusory pleading of Razzoli's due process claim does not give any indication that a valid claim might be stated.  Accordingly, Razzoli is denied leave to amend his due process claim as well. See Cuoco, 222 F.3d at 112 (affirming dismissal of claims without leave to replead because "[t]he problem with [plaintiff's] causes of action is substantive [and therefore,] better pleading will not cure" them).

### III. CONCLUSION

For the foregoing reasons, the Report is ADOPTED IN PART. The Petition is DISMISSED in its entirety with prejudice. Accordingly, this action shall be marked closed and all pending motions denied as moot.

Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see generally United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court thus declines to issue a certificate of appealability. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

A copy of this order has been mailed to Razzoli.


SO ORDERED.

Dated:    New York, New York
          May 30, 2014


_Loretta A. Preska_
LORETTA A. PRESKA
Chief United States District Judge